UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

JOHN DOE,

                             Plaintiff,

        -against-

UNITED STATES, et al.,

                         Defendants.

------------------------------------------------------------- x

**MEMORANDUM & ORDER**

3:24-CV-1146 (VDO)

**VERNON D. OLIVER**, United States District Judge:

Plaintiff John Doe brings this action against various federal and state governmental entities and individuals (collectively "Defendants") asserting claims under 42 U.S.C. §§ 1983 and 1985. Before the Court are two motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12 by Defendants. For the reasons that follow, the motions are **granted**. In addition, the Court *sua sponte* **dismisses** the claims against the Director of the National Conference of State Legislators and **denies** Plaintiff's request for leave to amend his complaint a third time.

I.    **BACKGROUND**

    A.    **Factual Background**

The facts in the operative complaint are sparse.[1] The pleading itself is titled "Amended Complaint[.] This is a Federal Lawsuit Brought Forth Under $1983 Of 42 U[.]S[.]C[.] and Under $1985 Of 42 U[.]S[.]C[.] for Violations of Constitutional and Human Rights by the

---

[1] The operative complaint here refers to the Second Amended Complaint (hereinafter the "Complaint"). ECF No. 35. All citations to documents refer to the ECF document number (i.e., "ECF No. __") and pagination in the ECF header unless otherwise noted.

Defendants of this Action, Violations by the Enactment and Ongoing Effort to Ingrain into the American Way of Life of the United States the US and State Sex Offender Registries . . ."[2]

As the Court can best discern and as potentially relevant in deciding this motion, Plaintiff, in his Complaint, alludes to:

- Having "35 years on the registry."[3]

- Having to "Register for the Registry," purchase postage stamps, and spend time in the line at the post office to mail a registry form.[4]

- Being arrested and convicted of criminal trespassing and loitering on school grounds after he was "approached by the police after a woman told another woman [he] was on the registry."[5]

- "On or about August 8, 1994, . . . [t]he police then returned to the car and drove me downtown and booked me for exposing myself to 3 young boys . . . After reali[z]ing that my Public Defender had no real interest in me, and who is now a Judge, I asked him "Can you just give me 10 years and get this over with". And I thought he understood. I was sentenced to 16 years, suspended after 6. I did the 6 years and was released. . . . My Norwalk probation officer informed me that he had a report that I was at the Cove park. He then initiated Violation of Probation papers and had me sentenced to the remaining 10 years. Of course this is years later."[6]

However, throughout the Complaint, Plaintiff does not clearly allege that he was convicted of a crime that requires him to register as a sex offender, what the conviction was or when it occurred, or that he is presently required to register as a sex offender in Connecticut or elsewhere. Plaintiff does not define the term "United States Sex Offender Registry," "US and State Sex Offender Registries," "this registry," or the "Sex Offender Registry" in the Complaint.

---

[2] Compl., ECF No. 35 at 3–4.
[3] *Id.* at 4.
[4] *Id.* at 24.
[5] *Id.* at 12.
[6] *Id.* at 54–55.

The Complaint also makes numerous references throughout to various states' sex offender registry requirements, requirements for international travel, and the Department of Defense's requirements for offenders convicted of Uniform Code of Military Justice offenses.[7] The Complaint alleges that former Presidents Bush and Clinton signed (or influenced or instructed the passage of) the passage of "[t]he US and State Sex Offender Registries" and "laws that violate the Constitution."[8] While naming former Presidents Bush and Clinton in both their official and personal capacities, the Complaint makes no personal capacity allegations against former Presidents Bush and Clinton. The Complaint also makes no specific allegations against any federal official or Member of Congress, despite naming dozens of such officials and members.

The Complaint is difficult to follow and relies heavily on conclusory assertions and baseless factual contentions. For example, Plaintiff cites to "facts in support of amended complaint" that include references to a YouTube video entitled "I killed my pe[]dophile husband" and various comments posted in response to that video.[9] Plaintiff references another YouTube video which he describes as "entitled: 'Five mothers who took revenge on child molesters.' And it shows a bare chested man with the letter 'Z' carved on his chest with the superscription: 'She cut off his d#ck.' [How does this sort of absurd assault make the world we live in safer . . . ]"[10] It is entirely unclear how these materials—or Plaintiff's commentary about them—bear any relation to the legal claims asserted in this case.

---

[7] *See generally id.*

[8] *See id.* at 8–10, 15, 38, 41, 49.

[9] *Id.* at 62–64.

[10] *Id.* at 63.

Plaintiff also makes numerous vague and vacillating allegations without any reference as to what he is specifically referring or makes allegations that are plainly contradicted by allegations within his own complaint or other filings:

- "We, *in certain instances and mostly all of the time* are not allowed to live or walk within 1,000-2500 feet from a school."[11]

- "Out of State travel is a guaranteed right to every citizen in the United [S]tates, however, if I or any Sex Offender travels out of state and stays in another state for a duration of time, *lets just say 3 days-as I am not sure of the exact number*-I or that person on the US and State Sex Offender Registries must register in the state where that person has traveled."[12]

- "Sex offenders are the most likely of persons in the US to be denied a job because no one chooses to hire me or any sex offender claiming that 'We don't practice prejudicial hiring, but we are heading in a different direction.' This places me and those on the registry several tiers below illegal aliens who are given preferential treatment in all phases of daily affairs."[13] Yet, Plaintiff states he is employed with $4,300 monthly income.[14]

- "We are moved away from the mainstream of society by laws directed to force us to live in the Everglade forest of Florida, under bridge overpasses, and in cardboard boxes which i [sic] or they must stay at as if it was our home in all states."[15] Yet, Plaintiff states he owns a home with an estimated value of $140,000.[16]

With respect to remedies, Plaintiff seeks monetary relief of $35 million in compensatory damages, $50 million in punitive damages, a declaratory judgment that federal and state sex offender registries are unconstitutional, "lawyer fees and other fees,"[17] "to punish

---

[11] *Id.* at 21 (emphasis added).
[12] *Id.* at 25 (emphasis added).
[13] *Id.* at 28
[14] *See* ECF No. 10.
[15] Compl. at 39.
[16] ECF No. 10.
[17] Compl. at 3

those heretofore enforcing the registry. . . ,"[18] and to "put an end to [federal and state sex offender registries] in perpetuity."[19]

### B.    Procedural History

Plaintiff, proceeding anonymously, filed his initial complaint in this action against the United States on July 2, 2024.[20] On August 13, 2024, Plaintiff moved the Court to file an amended complaint.[21] The Court granted that motion on August 13, 2024, stating that at that point Plaintiff may amend his complaint as a matter of course, and the amended complaint became the operative complaint in this action (hereinafter the "FAC").[22] Plaintiff filed the FAC "under 43 US $ 1983 [sic] for Constitutional Violations of Fundamental Human Rights" regarding "the United States Sex Offender Registry," [23] naming numerous federal and state agencies and officials as defendants.[24] On December 9, 2024, the federal government defendants named in the FAC ("Initial Federal Defendants") moved to dismiss the FAC on numerous grounds, including under Federal Rules of Civil Procedure 12(b)(1), (2), (5), and

---

[18] *Id.* at 4

[19] *Id.*

[20] *See* ECF No. 1.

[21] *See* ECF No. 12.

[22] *See* ECF Nos. 13, 14.

[23] FAC, ECF No. 14 at 2.

[24] (*Id.*) Specifically, Plaintiff named "Former President William Clinton, in his Official Capacity and in his Personal Capacity, United States Congressional Members of the House and Senate In their Official Capacity, Department of Commerce In their Officail [sic] Capacity, Judiciary Department In their Official Capacity, The office of the FBI In their Official Capacity, Office of Justice Programs In their Official Capacity, Department of Justice In their Official Capacity, Bureau of Prisons In their Official Capacity, Department of State In their Official Capacity, Bureau of Justice Assistance In their Official Capacity, Department of Defense In their Official Capacity, Secretary of Defense In his Official Capacity, Norwalk Connecticut Office of Adult Probation In their Official Capacity, National Conference of State Legislators In their Official Capacity, Connecticut Department of Public Safety in their Official Capacity, Norwalk Connecticut Department of Adult Probation In Their Official Capacity, Office of Sex Offender Sentencing, Monitoring, Apprehending, and Tracking (SMART Office) In their Official Capacity" ECF No. 14 at 1 (citation modified).

(6).[25] The Initial Federal Defendants argued that, *inter alia*, Plaintiff failed to effectuate service upon the United States and the Initial Federal Defendants.[26]

On December 27, 2024, Plaintiff filed both a response to the Initial Federal Defendants' motion to dismiss as well as a motion to amend his complaint for a second time.[27] In the motion to file a second amended complaint and within the proposed second amended complaint attachment, with the stated purpose of adding a 42 U.S.C. § 1985 claim, Plaintiff named only the United States as the defendant.[28] On January 28, 2025, the Court granted, over the Initial Federal Defendants' objection, Plaintiff's motion to amend his complaint for a second time and ordered Plaintiff to file his amended complaint on the docket on or before February 18, 2025.[29] On February 7, 2025, Plaintiff filed his second amended complaint (the "Complaint") in which he added numerous new defendants, including former President George Bush in his official and personal capacities, the Director of the Bureau of Indian Affairs, and numerous Members of Congress from across various states.[30]

---

[25] *See* ECF. No. 23.

[26] *See id.*

[27] *See* ECF Nos. 28 and 29.

[28] *See* ECF No. 28.

[29] *See* ECF No. 34.

[30] (*See* Compl. at 1-3.) Specifically, Plaintiff named "Former President William Clinton, in his Official Capacity and in his Personal Capacity, Former President George W. Bush, in his Official Capacity and in his Personal Capacity, United States Congressional Members of the House and Senate In their Official Capacity, Director of the Department of Commerce In his/her Official Capacity, Director of the Judiciary Department In his/her Official Capacity, Director of The office of the FBI In his/her Official Capacity, Director of the Office of Justice Programs In his/her Official Capacity, Director of the Department of Justice In his/her Official Capacity, Director of the Bureau of Prisons In his/her Official Capacity, Director of the Department of State In his/her Official Capacity, Director of the Bureau of Justice Assistance In his/her Official Capacity, Director of the Department of Defense In his/her Official Capacity, Secretary of Defense In his/her Official Capacity, Director of the Norwalk CT Office of Adult Probation In his/her Official Capacity, Director of the Bureau of Indian Affairs in his/her Official Capacity, Director of the

The remainder of this memorandum refers to the Director of the Norwalk Connecticut Office of Adult Probation and the Director of the Connecticut Department Public Safety as the "State Defendants."[31] The remaining defendants, except for the Director of the National Conference of State Legislators, are referred to as the "Federal Defendants."

Federal Defendants filed their Motion to Dismiss on March 14, 2025.[32] Plaintiff filed two responses to that motion on March 18, 2025, and March 31, 2025, respectively.[33] The Federal Defendants filed their reply on April 8, 2025.[34] Plaintiff subsequently attempted to file a sur-reply.[35] Because he did not seek leave from the Court to do so, that sur-reply was improperly filed, and the Court declines to consider it in the instant opinion. *See* L. R. Civ. Pro. 7(d) ("No sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause").

---

National Conference of State Legislators In his/her Official Capacity, Director of the Director of the [sic] Connecticut Department of Public Safety in his/her Official Capacity, Director of the Norwalk Connecticut Department of Adult Probation in his/her Official Capacity, Director of the Office of Sex Offender Sentencing, Monitoring, Apprehending, and Tracking (SMART Office) In his/her Official Capacity, Representative Nancy Pelosi in her Official Capacity, Representative Ken Calvert in his Official Capacity, Representative Steny Hoyer in his Official Capacity, Representative Marcy Kaptur in his Official Capacity, Representative Hal Rogers in his Official Capacity, Representative Chris Smith in his Official Capacity, Representative Frank Lukas in his Official Capacity, Senator Chuck Schumer in his Official Capacity, Senator Mike Crapo in his Official Capacity, Senator Ed Markey in his Official Capacity, Senator Kim Ward in her Official, Senator Ron Wyden in his Official Capacity, Senator Chuck Grassley in his Official Capacity, Senator Susan Collins in her Official Capacity, Senator Mitch McConnell in his Official Capacity" Compl. at 1–3 (citation modified).

[31] As the Court has previously noted, "Plaintiff appears to have named the Director of the Norwalk Connecticut Department of Public [S]afety twice in his amended complaint." (ECF No. 44.) The Court, in the remainder of this opinion, construes the two as one Defendant, absent its analysis of relevant service issues in Section III(B)(1), *infra*.

[32] *See* ECF No. 45.

[33] *See* ECF Nos. 49, 50.

[34] *See* ECF No. 52.

[35] *See* ECF No. 66.

The State Defendants filed their Motion to Dismiss on July 29, 2025.[36] Plaintiff filed his response to that motion on August 19, 2025.[37] State Defendants did not file a reply.

The Director of the National Conference of State Legislators has not yet appeared on the docket.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In ruling on a jurisdictional challenge to the complaint, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id.* at 554.

### B.   Motion to Dismiss for Lack of Personal Jurisdiction

"A prima facie case of personal jurisdiction requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Ferrara v. Munro*, 585 B.R. 269, 281 (D. Conn. 2018) (quoting *Chirag v. MT Marida*

---

[36] *See* ECF No. 70.
[37] *See* ECF No. 72.

*Marguerite Schiffahrts*, 604 Fed. App'x. 16, 19 (2d Cir. 2015) (internal citations omitted). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)).

### C.    Motion to Dismiss for Insufficient Service of Process

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) is properly granted when the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 109 (D. Conn. 1999). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.* at 110 (citations omitted).

### D.    Motion to Dismiss for Failure to State a Claim

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court also notes that pro se litigants enjoy "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (per curiam). A court must hold a pro se complaint to "less stringent standards[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In other words, a court must interpret a pro se litigant's submissions "to raise the strongest arguments that they suggest." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022).

## III.    DISCUSSION

### A.    Subject-Matter Jurisdiction

The Court begins with subject-matter jurisdiction, focusing primarily on the immunities that bar Plaintiff's claims against both the Federal and State Defendants.[38]

#### 1.    Claims Against Federal Defendants

The Federal Defendants are immune from Plaintiff's claims brought under 42 U.S.C. § 1985(3). "It is . . . axiomatic under the principle of sovereign immunity that the United States may not be sued without its consent . . ." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (citation modified); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). A party who sues the United States asserting a waiver of sovereign immunity "bears the burden to show Congress waived sovereign immunity with respect to their claims." *Thompson v. U.S. Dep't of Educ.*, No. 20-CV-693, 2021 WL 1199493, at *2 (S.D.N.Y. Mar. 30, 2021).

Here, the Plaintiff has established neither a waiver nor consent to be sued. In such cases, a plaintiff may not maintain his damage claims against the defendants in their official

---

[38] Standing presents an additional jurisdictional defect, but because it largely turns on the vague and conclusory nature of the allegations, it is more appropriately considered in connection with the Rule 12(b)(6) discussion in Section III(C)(2), *infra*.

capacities, and such claims are subject to dismissal. *See* Tanvir v. Tanzin, 894 F.3d 449 (2d Cir. 2018), aff'd, 592 U.S. 43 (2020) ("Absent a waiver, sovereign immunity shields the Federak Government and its agencies from suit. . . . Sovereign immunity does not, however, shield federal officials sued in their individual capacities." (cleaned up)). While Plaintiff also brings the instant case against President Bush and President Clinton in their personal capacities, he does not make any personal capacity allegations against them within the Complaint.[39] With respect to any allegations against the former Presidents relating to their presidential duties, they are entitled to absolute immunity from such claims. The Supreme Court has held that "Congress cannot act on, and courts cannot examine, the President's actions on subjects within his 'conclusive and preclusive' constitutional authority." *Trump v. United States*, 603 U.S. 593, 6–09 (2024); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) ("[P]etitioner, as a former President of the United States, is entitled to absolute immunity from damages liability predicated on his official acts."); *Jolley v. Bush*, Case No. 04-CV-210 (PCD), 2004 WL 288803, at *1 (D. Conn. Feb. 10, 2004) (dismissing complaint *sua sponte* for failing to state a cognizable claim and finding that "to any extent Plaintiff sues the President for his official acts, the President of the United States is entitled to absolute immunity from damages liability predicated on his official acts") (citation modified).

Here, Plaintiff makes claims relating to a fundamental power that the Constitution provides to the President: "recommending to Congress the measures he thinks wise and signing or vetoing the bills Congress passes." *See Trump*, 603 U.S. at 607 (citing U.S. Const.. art. I, §

---

[39] The failure to make any personal capacity allegations raises separate personal jurisdiction concerns, discussed at greater length in Section III(B)(2), *infra*.

7, cl. 2; art. II, § 3). Former Presidents Bush and Clinton are thus immune from the allegations listed in Plaintiff's Complaint.

The Members of the House and Senate are also entitled to absolute immunity under the Speech or Debate Clause. *See* U.S. Const.. art. I, § 6, ("[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975) (Where it applies, "the prohibitions of the Speech or Debate Clause are absolute[.]"); *see also Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (Clause provides "absolute immunity[.]").The immunities of the Speech or Debate Clause were written into the Constitution "to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972). Activities within the protection of the Speech or Debate Clause are those that are an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972); *see also Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 10–11 (D.C. Cir. 2006) (describing the legislative process as "at the least include[ing] delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation making; publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at Committee hearings" (citation modified)).

Here, Plaintiff challenges a fundamental function of the legislative process: voting on and passing laws. *See, e.g., Gravel*, 408 U.S. at 617 (stating that "Committee reports,

resolutions, and the act of voting are . . . covered" by the Speech or Debate Clause). Moreover, though Plaintiff alleges certain pieces of legislation might be illegal, that "'familiar' argument—made in almost every Speech or Debate Clause case—has been rejected time and again." *Rangel*, 785 F.3d at 24 (internal citation omitted); *Penny v. Pelosi*, 538 F. Supp. 3d 850, 857 (C.D. Ill. 2021), *aff'd*, No. 21-CV-2039, 2021 WL 6102166 (7th Cir. Dec. 23, 2021) (dismissing pro se plaintiff's action against Speaker and Members of the U.S. House of Representatives who voted in favor of impeaching then-former President Trump, reasoning that, despite an allegation that the impeachment was illegal, Members of Congress were absolutely immune and that "the solution is not a judicial one, but rather a political one which must be resolved at the ballot box"). The Members of Congress named in the Complaint are therefore immune from the allegations made in the Complaint.

### 2.    Claims Against State Defendants

As it relates to State Defendants, to the extent that Plaintiff brings claims against them for monetary damages, declaratory relief, and injunctive relief under 42 U.S.C. §§ 1983 and 1985(3), the Court agrees with State Defendants' argument that those claims are barred by the Eleventh Amendment.

The Eleventh Amendment bars suits for monetary damages against state governments and state officials when they are sued in their official capacities "in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *See, e.g., Yerdon v. Poitras*, 120 F.4th 1150, 1153 (2d Cir. 2024). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*,

996 F.2d 522, 529 (2d Cir. 1993). "[W]aiver of a State's Eleventh Amendment immunity will not be found unless such consent is 'unequivocally expressed.'" *Close v. New York*, 125 F.3d 31, 39 (2d Cir. 1997) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). The Eleventh Amendment's bar to monetary damages includes punitive damages. *Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995) ("Punitive damages . . . are not available against the state").

Plaintiff sues State Defendants only in their official capacities.[40] Thus, the claims against the State Defendants in their official capacity for compensatory or punitive damages are dismissed, as the Court lacks subject matter jurisdiction to adjudicate them.

Nor does Plaintiff successfully invoke the *Ex parte Young* exception to sovereign immunity—the only avenue through which Plaintiff may raise a federal claim against state officials acting in their official capacity. Any claim that seeks to implicate the *Ex parte Young* exception must allege an ongoing violation and seek prospective relief. *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). The doctrine is "a narrow exception" to sovereign immunity that exists only to "prevent[ ] state executive officials from enforcing state laws that are contrary to federal law." *Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 829 (2d Cir. 2025) (quoting *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022)). However, it "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Idlibi v. Burgdorff*, No. 23-CV-7384, 2024 WL 3199522, at *3 (2d Cir. June 27, 2024*), cert. denied*, 145 S.Ct. 547 (2024) ("[A] plaintiff cannot make an 'end run around the Eleventh

---

[40] Compl. at 2.

Amendment' by seeking a declaration or an injunction based solely on past violations of federal law" (quoting *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000))). Thus "[i]n determining whether a litigant's claim falls under the *Ex parte Young* exception, we ask two questions: whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Vega*, 963 F.3d at 281.

Here, Plaintiff neither alleges an ongoing violation of federal law nor seeks prospective relief. The Court agrees with State Defendants' assertion that "[a]ny claim that Plaintiff makes against the 'Director of the Norwalk Connecticut Department of Adult Probation' is retrospective . . ."[41] Plaintiff refers to his time in probation only in the past tense. For example, Plaintiff alleges that "[w]hen [he] *was* under the supervision of the Norwalk, CT Department of Probation, [he] *was* forced to pay for treatment" and that "[d]uring [his] time in Norwalk Probation, [his] *then* probation officer, forcing [Plaintiff] to take part in counselling, made [him] quit the job that I had . . . ."[42] Plaintiff further states that he was "sentenced to 1 year of Probation."[43] Coupled with his statement about having "35 years on the registry," the Court concludes that Plaintiff is likely no longer on probation and has not been for a significant amount of time. In other words, he cannot point to an ongoing violation of federal law.

Nor can the substance of relief sought by Plaintiff be classified as "prospective" in nature. Allegations of "isolated past incidents, in conjunction with conclusory language requesting injunctive relief in the form of 'nullification' . . . is insufficient for purposes of *Ex parte Young*." *Kelsey v. Kessel*, No. 22-CV-03774, 2024 WL 1020522, at *4 (S.D.N.Y. Mar.

---

[41] ECF No. 70-1 at 13.
[42] Compl. at 33, 56 (emphasis added).
[43] *Id.* at 12.

8, 2024), *aff'd*, No. 24-1105, 2025 WL 1324213 (2d Cir. May 7, 2025) (citing *Pierre v. N.Y. State Dep't of Corr. Servs.*, No 05-CV-0275, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009)). In *Pierre*, the court similarly found that an "isolated incident of alleged disability discrimination, in conjunction with conclusory language requesting unspecified injunctive relief, is insufficient for purposes of *Ex parte Young*." 2009 WL 1583475 at *18.

Here, the only injunctive relief requested by Plaintiff, with respect to the State Defendants, is an "end [to the sex] registry in total."[44] This request, coupled with Plaintiff's mentions of past incidents that occurred while he was on probation, do not properly implicate the *Ex parte Young* exception. They amount merely to a rendition of "isolated past incidents, in conjunction with conclusory language requesting injunctive relief in the form of 'nullification'" of all sex offender registry laws, clearly outside of the scope of *Ex parte Young*. Thus, the Court holds that any claims raised by Plaintiff for "prospective" declaratory or injunctive relief against the Director of the Norwalk Connecticut Department of Adult Probation are barred by the Eleventh Amendment.

Any claim that Plaintiff brings for injunctive relief against State Defendants under state law is further barred under the *Pennhurst* doctrine, which does not permit federal claims asserting state officials violated state law in carrying out their official duties under the Eleventh Amendment. *Vega*, 963 F.3d at 284 (2d Cir. 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)). "In *Pennhurst*, the Supreme Court held that sovereign immunity prohibits federal courts from entering injunctions against state officials on the basis of *state* law, notwithstanding the *Ex parte Young* exception to sovereign immunity with respect

---

[44] Compl. at 10.

to violations of *federal* law." *Vega*, 963 F.3d at 283 (citing *Pennhurst*, 465 U.S. at 106); *see also Campbell v. City of Waterbury*, 585 F.Supp.3d 194, 203 (D. Conn. 2022) ("[T]he *Ex Parte Young* exception extends only to violations of federal law, *not state law*." (emphasis added)).

Plaintiff asserts that Connecticut is among fifteen states that has promised the right to privacy within its constitution and that it has comprehensive data privacy laws in place.[45] To the extent that the Court construes this as a claim that the sex offender registry, maintained in accordance with Conn. Gen. Stat. § 54-250 et seq., is in violation of the Connecticut Constitution and some unspecified data privacy laws, these claims are rooted in state law and therefore barred by the *Pennhurst* doctrine. Thus, they are dismissed.

## B.     Personal Jurisdiction

Plaintiff's claims also fail for lack of personal jurisdiction. Most of the Federal Defendants—and one of the State Defendants—were never properly served, and Plaintiff's allegations against former Presidents Clinton and Bush do not establish the minimum contacts with Connecticut necessary to support jurisdiction. These deficiencies provide an independent basis for dismissal as to many of the named defendants.

### 1.     Ineffective Service

Relying on grounds of ineffective service, Federal Rule of Civil Procedure (12)(b)(5), Federal Defendants move to dismiss any claims against the United States and all Federal Defendants.[46] The Federal Defendants assert that Plaintiff did not comply with the Federal Rule of Civil Procedure 4(c)(2) so as to effectuate service in a proper manner. Federal Rule of Civil Procedure 4(c)(2) mandates that only a "person who is at least 18 years old and *not a*

---

[45] Compl. at 32.
[46] ECF No. 45-1 at 24–25.

*party* may serve a summons and complaint" (emphasis added). *See also Constien v. United States*, 628 F.3d 1207, 1215 (10th Cir. 2010) ("Even when service is effected by use of the mail, only a nonparty can place the summons and complaint in the mail."); *Lopez v. Shopify, Inc.*, Case No. 16-CV-9761, 2017 WL 2229868, at *7 (S.D.N.Y. May 23, 2017), *report and recommendation adopted*, 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018) ("[Plaintiff] could not personally serve [Defendant]."); *Hahn v. United States*, Case No. 23-CV-4470, 2024 WL 3298474, at *1 (E.D.N.Y. July 2, 2024 ("[P]laintiff's certified mail receipts 'do not reflect who sent the certified mailings—specifically, whether the documents were mailed by a person over 18 years old who is not a party to the actions.'"(citation omitted)). And "[t]here is no exception for pro se litigants." Lopez, 2017 WL 2229868, at *7 (quoting *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 Fed. Appx. 665, 672 (5th Cir. 2015).

Federal Defendants also assert that Federal Rule of Civil Procedure 4(i)(2) requires a plaintiff suing a federal agency or corporation, or federal officer or employee sued only in an official capacity, to serve the United States "and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee."[47] It is the plaintiff's burden to prove valid service by providing, among other things, a signed certified-mail return receipt by the recipient. *See Fuqua v. Turn*er, 996 F.3d 1140, 1155 (11th Cir. 2021) (affirming invalidity of service upon Attorney General when return receipt was not signed).

Here, Plaintiff appears to have made seven service-related filings since filing the operative complaint in the instant matter.[48] Plaintiff initially served or mailed the Complaint

---

[47] ECF No. 45-1 at 24–25.
[48] *See* ECF Nos. 40, 53, 56, 58, 59, 67, 68.

himself to all Defendants, rather than having a nonparty effectuate service. In February, Plaintiff filed proofs of service where, on each proof, he stated that "[he] mailed this service by U.S.P.S. certified mail" and signed his name as the "Servers signature."[49] The Court subsequently reminded Plaintiff that he "may not personally serve the summons and complaint on Defendants."[50]

In subsequent filings, Plaintiff provided proofs of service filled out by a third party (ECF Nos. 53, 56) and signed return receipts for some of the named defendants (ECF Nos. 58, 59, 68). However, with respect to most of the Federal Defendants, it does not appear that Plaintiff has met his burden to prove valid service by providing, among other things, a signed certified-mail return receipt by the recipient. Specifically, though the Court has identified proofs of service signed by a third-party for some of the Federal Defendants, the Court fails to locate in the record signed return receipts for the following Federal Defendants:

- Former President George W. Bush, in his Official Capacity and in his Personal Capacity

- United States Congressional Members of the House and Senate In their Official Capacity

- Director of the Department of Commerce In his/her Official Capacity

- Director of the Office of Justice Programs In his/her Official Capacity

- Director of the Department of Defense In his/her Official Capacity

- Secretary of Defense In his/her Official Capacity

---

[49] ECF No. 40.
[50] ECF No. 42. *See also* Order denying Motion for Default Judgment, ECF No. 44 (reminding Plaintiff that he "may not personally effect service of process under either Rule 4 or Connecticut state law").

- Director of the Office of Sex Offender Sentencing, Monitoring, Apprehending, and Tracking (SMART Office) In his/her Official Capacity

- Representative Nancy Pelosi in her Official Capacity

- Representative Ken Calvert in his Official Capacity

- Representative Steny Hoyer in his Official Capacity

- Representative Marcy Kaptur in her Official Capacity

- Representative Hal Rogers in his Official Capacity

- Representative Chris Smith in his Official Capacity

- Representative Frank Lukas in his Official Capacity

- Senator Chuck Schumer in his Official Capacity

- Senator Mike Crapo in his Official Capacity

- Senator Ed Markey in his Official Capacity

- Senator Kim Ward in her Official

- Senator Ron Wyden in his Official Capacity

- Senator Chuck Grassley in his Official Capacity

- Senator Susan Collins in her Official Capacity

Thus, at least as it relates to the above-listed Federal Defendants, ineffective service provides an additional ground upon which to dismiss the Complaint.

State Defendants, meanwhile, move to dismiss any claims against the "Director of Norwalk CT Office of Adult Probation"[51] As previously mentioned, Plaintiff named two, apparently identical defendants in the Complaint: the "Director of the Norwalk CT Office of

---

[51] ECF No. 70-1 at 2.

Adult Probation," and the "Director of the Norwalk Connecticut Department of Adult Probation."[52] State Defendants assert that "Plaintiff only served the instant Amended Complaint on the "Director of the Norwalk Connecticut Department of Adult Probation" and the Court should thus "dismiss the Plaintiff's claims against the supposed 'Director of the Norwalk CT Office of Adult Probation' under Rule 12(b)(5) for lack of proper service."[53] As the Court previously noted:

> [P]ursuant to Conn. Gen. Stat. § 52-64(a), "[s]ervice of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford."[54]

The docket reflects that Plaintiff, in line with Conn. Gen. Stat. § 52-64(a), properly served two copies of his complaint upon the Connecticut State Attorney General, William Tong.[55] While it is technically unclear which two of the three State Defendants he appeared to serve, it is reasonable to infer that Plaintiff intended to serve the Department of Public Safety and only one version of the identically named probation office defendants. Accordingly, because the two probation-related defendants appear to be duplicative, and because service on the Attorney General would be effective for either entity under § 52-64(a), dismissing one of

---

[52] Compl. at 2.
[53] Mot. to Dismiss, ECF No. 70-1 at 8–9.
[54] ECF No. 55 (quoting Conn. Gen. Stat. § 52-64(a)).
[55] *See* ECF Nos. 59 at 3, 58 at 7, 53 at 90, 53 at 91.

the duplicate entities would clarify the record and promote efficiency. The "Director of the Norwalk CT Office of Adult Probation" is thus dismissed on grounds of improper service.

### 2.    Failure to Establish Minimum Contacts

Aside from lack of personal jurisdiction over those defendants not properly served, Federal Defendants also assert that "the Court does not have personal jurisdiction over President Bush and President Clinton in their personal capacities."[56] The Court agrees. With respect to the former Presidents, Plaintiff does not allege any acts in or contacts with Connecticut (save President Clinton being a graduate of Yale Law School), referring only to their general law-enforcement activities as members of the executive branch. He also acknowledges that President Clinton resides in New York and President Bush resides in Texas.[57] Thus, Plaintiff has failed to assert a *prima facie* case that there is personal jurisdiction over former Presidents Clinton and Bush. *See* Conn Gen. Stat. § 52-59b(a); *see also Leftridge v. Jud. Branch*, Case No. 22-CV-411 (JAM), 2023 WL 4304792, at *11 (D. Conn. June 30, 2023) (holding that personal jurisdiction does not exist over a defendant where a plaintiff has not pled "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place") (internal quotation omitted); *Clark v. Connecticut*, Case No. 23-CV-1527 (SVN), 2024 WL 4349054, at *8 (D. Conn. Sept. 30, 2024) (finding that exercising personal jurisdiction over defendants, under Connecticut's long-arm statute, would not be appropriate where plaintiff did "not adequately allege[] a single purposeful business transaction conducted" by the defendants within the state and that such exercise would also "violate due process").

---

[56] ECF No. 45-1 at 13.

[57] *See* Compl. at 60.

### C.    Failure to State a Claim

Plaintiff's claims also fail on the merits. They are barred at the threshold by the applicable statute of limitations, and even if they were timely, the Complaint suffers from significant pleading deficiencies and a lack of cognizable constitutional or statutory claims, relying on conclusory allegations and extraneous material rather than well-pled facts.

### 1.    Statute of Limitations

All of Plaintiff's sections 1983 and 1985 claims against all Defendants are barred by the statute of limitations. An "action may be dismissed as frivolous if a complaint is time-barred on its face under the applicable statute of limitations." *Speer v. Norwich Pub. Utilities*, No. 3:19-CV-2005 (JCH), 2021 WL 1978702, at *4 (D. Conn. May 18, 2021), *aff'd,* No. 21-CV-1353, 2022 WL 852968 (2d Cir. Mar. 23, 2022) (citing *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1996)); *see also Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[A]lthough the statute of limitations is ordinarily an affirmative defense that the defendant must raise . . . district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (citations and internal quotation marks omitted)).

"Claims for constitutional violations under [sections] 1983 and 1985 are governed by a three-year statute of limitations." *Young v. Duncan*, Case No. 18-CV-857 (AWT), 2018 WL 11302943, at *2 (D. Conn. June 4, 2018) (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994); *Miller v. Bridgeport Police Dep't*, Case No. 14-CV-00689 (JAM), 2016 WL 3086402, at *4 (D. Conn. May 31, 2016), *aff'd sub nom. Miller v. City of Bridgeport Police Dep't*, 718 F. App'x 49 (2d Cir. 2017) ("All of plaintiff's federal civil rights claims are subject

to Connecticut's 3-year statute of limitations for personal injury actions." (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994))). "The statute of limitations 'accrues' (*i.e.*, begins to run) on the date when 'the plaintiff knows or has reason to know of the injury which is the basis of his [or her] action.'" *Miller*, 2016 WL 3086402, at *4 (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see also Hogan v. Fisher*, 738 F.3d 509, 518 (2d Cir. 2013) ("[A]ccrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action.") For Plaintiff, this would have occurred when he was "first classified" as a sex offender. *Romero v. Lander*, 461 F. App'x 661, 689 (10th Cir. 2012); *see also McDay v. Paterson*, 09-CV-500, 2010 WL 4456995 at *5 (S.D.N.Y. Nov. 1, 2010) (holding that accrual date for classification as sex offender started when Plaintiff was first classified as such).

Given Plaintiff's reference to events in 1994 and his reference to "35 years on the registry," it can be inferred that the harm he alleges that is caused by having to register as a sex offender did not accrue within the last three years. His claims are therefore barred by the statute of limitations. Furthermore, the Complaint contains allegations pertaining to laws largely passed decades ago with the most recent, International Megan's Law, enacted nine years ago. Plaintiff provides no other details of recent harm, only vaguely relating that the past harm of the passage of laws related to sex offenders and his qualification as the same has caused him inconvenience. Thus, the Court holds that Plaintiff's claims are time-barred.

## 2.    Pleading Deficiencies

The Complaint does not meet the basic pleading standards required to state a claim. Although courts must construe a pro se plaintiff's complaint liberally, such plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Costabile v. N.Y. City*

*Health & Hosps. Corp.*, 951 F.3d 77, 80–81 (2d Cir. 2020) (internal quotation marks omitted).

A complaint must "give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343

(2d Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)); *see also* Fed.

R. Civ. P. 8(a)(2). Moreover, although the Court is "obligated to draw the most favorable

inferences that [Plaintiff's] complaint supports, [it] cannot invent factual allegations that he

has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Conclusory allegations

do not create triable issues of fact and therefore must be dismissed. *See, e.g., Hicks v. Baines*,

593 F.3d 159, 167 (2d Cir. 2010) ("Plaintiffs' affidavits on this point lack specifics and are

conclusory; a party cannot create a triable issue of fact merely by stating in an affidavit the

very proposition they are trying to prove."); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.

1995) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine

issue of material fact where none would otherwise exist" (internal quotation marks omitted)).

An action is considered "frivolous" when: "(1) the factual contentions are clearly baseless,

such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co*., 141 F.3d 434,

437 (2d Cir. 1998) (internal quotation marks omitted).

　　　As discussed in the background of this memorandum, the Complaint is composed

largely of vague and conclusory claims that both Federal Defendants and State Defendants

have engaged in conspiracies and actions with the intent of depriving Plaintiff of unspecified

rights under unidentified statutes. Plaintiff's section 1985 claims, for example, are composed

entirely of conclusory statements that the Defendants acted "in conspiracy" with other

government entities to enforce laws promulgated by the federal and state legislatures. For

example, he alleges that "then President Clinton, President Bush, State Legislators across the Country, State and City Governments, City Social Services and local neighborhoods in general . . . acted in conspiring to influence the passage of laws" and that "[Members of Congress] have ingrained themselves in conspiracy" but provides no further details as to the referenced "conspiring" or "conspiracy."[58] Plaintiff also alleges that "the United States Congress and President Clinton in conspiracy with State and Federal Legislators enacted" Megan's Law, again failing to elaborate on the referenced conspiracy.[59] And in another example, Plaintiff states that the "reason for me having no Constitutional protections is a Conspiracy which the State of Connecticut has taken part of along with the Federal Government to track, monitor, possibly follow and profile me for being on this illegal US and State Sex Offender Registry."[60] He again fails to provide details on the "Conspiracy" he mentions. Formulaic recitations that Defendants engaged in a conspiracy are inadequate to surpass Plaintiff's Rule 8 burden and are properly dismissed under a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555–57.

As mentioned earlier, the Complaint also contains a "Facts in Support of Amended Complaint" consisting of a loose restatement of various supposed news stories and YouTube videos—most if not all of which are apparently related to issues in other states and not one of which is alleged to involve the Plaintiff—and comments on the same. The Court is unable to ascertain how these stories and videos are relevant to Plaintiff's case; nor is the Court convinced that they provide Defendants with adequate information to allow them to verify

---

[58] Compl. at 10.
[59] *Id.* at 15.
[60] *Id.* at 16.

Plaintiff's allegations. In other words, Plaintiff's Complaint fails to put Defendants (and the Court) on notice as to what, if any claims, they shall defend against.

Further, the Complaint merely references a number of the named Defendants in passing, if at all, without explaining what the respective Defendant has done, or how the respective Defendant has injured Plaintiff. For example, as to the Department of Defense ("DOD"), Secretary of Defense, and the Federal Bureau of Prisons ("BOP"), Plaintiff alleges the Appropriations Act of 1998 required BOP to notify states of "released or paroled federal offenders sentenced by court-martial" and required DOD to "track and ensure registration compliance of offenders with certain Uniform Code of Military Justice . . . ."[61] But Plaintiff alleges neither that he was a member of the military and convicted of an offense under the Uniform Code of Military Justice nor that he was a released or paroled federal offender sentenced by court-martial.[62] And other than naming the U.S. Department of State ("State Department"), the Department of Justice ("DOJ"), "Bureau of Justice Assistance", "Smart Program," and "Office of Justice Programs," the Complaint makes no discernable allegation of injuries with respect to the State Department, or DOJ and its offices. Nor does Plaintiff allege—despite naming the Director of the Bureau of Indian Affairs ("BIA") as a defendant— that he lives in the jurisdiction of a federally recognized Indian Tribe[63] or explain how he was injured by the BIA.

The special solicitude afforded to pro se litigants cannot save the current version of Plaintiff's complaint, which is "rambling, verbose, [and] at times incoherent[.]" See *Ruggiero*

---

[61] Compl. at 44–45.
[62] *Id.* at 45, 50.
[63] Plaintiff's listed address does not appear to be located within tribal territory.

*v. Mobile Crisis Team*, No. 12-CV-499, 2012 WL 4854660, at *4 (D. Conn. Oct. 11, 2012).

Regardless of the merit of Plaintiff's claims, the complaint is "indisputably prolix and often

unintelligible." *Fisch v. Consulate Gen. of Republic of Poland*, No. 11-CV-4182, 2011 WL

3847398, at *2 (S.D.N.Y. Aug. 30, 2011). This Court is not obliged to "wade through endless

pages of narrative to discern the causes of action asserted and the relief sought." *Id.* Thus, the

Court dismisses the Plaintiff's Complaint pursuant to rule 12(b)(6).[64]

### 3.    Lack of Cognizable Claims

While the Complaint is vague, the Court, construing its allegations as generously as

possible, agrees with Defendants that it amounts to an attack on the existence of the

Connecticut sex offender registry. But the Supreme Court has—on multiple occasions—

reviewed and affirmed the constitutionality of sex offender registries on a number of grounds.

*See, e.g., Smith v. Doe*, 538 U.S. 84, 105 (2003) (holding that Alaskan law requiring sex

offender registration was non-punitive, constitutional, did not implicate Ex Post Facto Clause);

*id.* at 98 ("Our system does not treat dissemination of truthful information in furtherance of a

legitimate governmental objective as punishment."); *United States v. Kebodeaux*, 570 U.S.

387, 397–99 (2013) (finding no constitutional violation where law required pre-SORNA

offenders to register; both SORNA and Wetterling Act were properly promulgated under the

Necessary and Proper Clause); *Gundy v. United States*, 588 U.S. 128, 147–48 (2019) (holding

constitutional Congress's authorization of Attorney General to designate SORNA's

---

[64] Moreover, as previously indicated, the threadbare nature of Plaintiff's allegations indicates that the Court lacks subject matter jurisdiction over them due to lack of standing under Rule 12(b)(1) scrutiny. *See, e.g.*, *Calcano v. Swaronski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) (reasoning that "threadbare assertions [that] are conclusory" do not demonstrate standing and that "a plaintiff may not rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing" (internal quotation marks omitted)).

applicability to pre-Act offenders); *see also United States v. Holcombe*, 883 F.3d 12, 17–18 (2d Cir. 2018) (stating that SORNA registration requirements "[did] not even implicate the [constitutional] fundamental right to travel," as mere movement-related inconveniences (emphasis added)). The Supreme Court has even reviewed Connecticut's sex offender registration law in particular and found it to be constitutional. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003). There, the Court reversed a Second Circuit decision that had enjoined the public disclosure of Connecticut's sex offender registry, finding that it did not deprive registered sex offenders of their Due Process rights. *Id.*

Nor is the Court persuaded by Plaintiff's remaining arguments, which allege violations of numerous constitutional provisions—including the Privileges and Immunities Clause, as well as the First, Second, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments—the Declaration of Independence, and various state laws. Because Plaintiff has not articulated these claims in a manner sufficient to state a plausible basis for relief and Defendants have in any event comprehensively rebutted them, the Court declines to discuss them at length. The Court is likewise unpersuaded by Plaintiff's assertions under international law. Plaintiff invokes sources such as the "World Human Rights Commission" and the American Declaration of the Rights and Duties of Man, but these invocations are vague and unsupported, and Plaintiff does not identify any enforceable cause of action under them. The Court thus declines to address them in detail.

### D.    *Sua Sponte* Dismissal of Claims Against the Director of the National Conference of State Legislators

Although the Director of the National Conference of State Legislators has not appeared on the docket or filed a motion to dismiss, the Court dismisses the claims against this defendant

on its own initiative. Federal courts possess the inherent authority to dismiss frivolous or legally insufficient claims *sua sponte*, particularly where the defects are apparent on the face of the pleadings. *See Rolle v. Berkowitz*, No. 03-CV-7120, 2004 WL 287678 (S.D.N.Y. Feb. 11, 2004) ("[C]ourts within the Second Circuit have not hesitated to dismiss *sua sponte* claims brought by fee-paying *pro se* plaintiffs when it is clear such claims 'present no arguably meritorious issues for [the Court's] consideration)'" (quoting *Pillay v. INS*, 45 F.3d 14, 17 (2d Cir. 1995)); *Mallard v. United States District Court*, 490 U.S. 296, 307–08 (1989) (concluding that courts have authority to dismiss a frivolous or malicious lawsuits even in the absence of any specific statutory provision). Here, for the reasons already discussed—including the absence of any cognizable legal theory, the lack of well-pleaded factual allegations, and the frivolous nature of Plaintiff's asserted rights—the claims against the Director suffer from the same incurable deficiencies as those against the other defendants. Accordingly, permitting these claims to proceed would serve no purpose and would needlessly burden the Court and any potential defendant. The Court therefore *sua sponte* dismisses the claims against the Director of the National Conference of State Legislators.

### E.    Leave to Amend Complaint

Ordinarily, the district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). But, as discussed above, Plaintiff's Complaint does not suggest any plausible claim, and his proposed Third Amended Complaint fails to address any of the deficiencies discussed above.[65]

---

[65] *See* ECF No. 48-1.

Moreover, Plaintiff has already been afforded two opportunities to amend his complaint, after being put on notice by the Court and by Federal Defendants of the defects in his pleadings. Yet they remain vague, conclusory, and legally deficient. Thus, repleading would be futile, and the Court denies Plaintiff's request to amend his Complaint. *See id.* (denying a plaintiff's request to amend complaint where the "[t]he problem with [the plaintiff's] causes of action is substantive [and] better pleading will not cure it"); *see also Fisher v. Rodriguez*, No. 3:16-CV-1763 (VLB), 2017 WL 736870, at \*2 (D. Conn. Feb. 24, 2017) (denying Plaintiff's request to amend his complaint for a third time and finding that it would be futile where complaint was "one that 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised'") (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **grants** Defendants' motions to dismiss (ECF Nos. 45 and 70) and dismisses Plaintiff's Complaint as against all Defendants. The Court **denies** Plaintiff's motion for leave to amend his complaint (ECF No. 48).

**SO ORDERED.**

Hartford, Connecticut
September 26, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge